

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

2??

Honorable Mortimer Brown
Executive Secretary
Teacher Retirement System of Texas
Austin, Texas

Dear Sir:

Opinion No. O-3649
Re: Medical examination of mem-
bers of Teacher Retirement
System for retirement be-
cause of disability. Rule
making power of Teacher Re-
tirement Board of Trustees.

We received your letter dated June 9, 1941, which
is self explanatory and reads, in part, as follows:

"An opinion from your Department is respect-
fully requested on the following question:

"Is it within the power of the Board of
Trustees of the Teacher Retirement System to
require a member of the Teacher Retirement Sys-
tem who is applying for retirement because of
permanent disability to pay a fee not to ex-
ceed $5.00 as a medical examination fee to an
examining physician designated by the Teacher
Retirement System?

"* * *

"The entire operating cost of the Teacher
Retirement System of Texas is borne by the $1.00
annual membership fee charged to each member.
It is impossible for the Board of Trustees to
determine in advance how many times the Board
will be requested by members of the System to
give medical examinations, and, consequently,
the Board is rather concerned over the ability
of this department to defray the expenses of

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Mortimer Brown, Page 2

such examinations. If the department is required to defray the expense for such examinations there is no source from which the money may be derived except from the $1.00 membership fee paid by the member.

"If a member could apply for a disability examination at no cost to the member, it is possible that numerous requests for examinations might be received where there is little probability that the person is permanently disabled and where such an individual would probably not request an examination if the examination is to be at his expense.

"In view of the above facts, it is possible that the operation of the System could be rather seriously impaired if the Board of Trustees is required to expend large sums of money annually on medical examinations. It is because of this problem that our department is requesting this opinion."

Section 5, Subsection 3 of Senate Bill No. 47, Acts of the 45th Legislature, Regular Session, as amended by Section 2, Subsection 3 of House Bill No. 1016, Acts of the Forty-seventh Legislature, Regular Session, reads as follows:

"'Upon the application of a member or of his employer or his legal representative acting in his behalf, any member who has had twenty (20) or more years of creditable service may be retired by the State Board of Trustees, not less than thirty (30) and not more than ninety (90) days next following the date of filing such application, on a disability retirement allowance, provided that the Medical Board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired."

Section 5, Subsection 5 of Senate Bill No. 47, supra, as amended by Section 2, Subsection 5 of House Bill

Honorable Mortimer Brown, Page 3

No. 1016, supra, reads, in part, as follows:

"'Once each year during the first five
(5) years following retirement of a member on
a disability retirement allowance, and once
in every three-year period thereafter, the
State Board of Trustees may, and upon his ap-
plication shall, require any disability bene-
ficiary who has not yet attained the age of
sixty (60) years to undergo a medical examina-
tion, such examination to be made at the place
of residence of said beneficiary or any other
place mutually agreed upon, by a physician or
physicians designated by the State Board of
Trustees. Should any disability beneficiary
who has not yet attained the age of sixty (60)
years refuse to submit to at least one medical
examination in any such periods by a physician
or physicians designated by the State Board
of Trustees, his allowance shall be discon-
tinued until his withdrawal of such refusal,
and should his refusal continue for one year,
all his rights in and to his allowance shall
be revoked by the State Board of Trustees."

Section 6, Subsection 12 of Senate Bill No. 47,
supra, as amended by Section 3, Subsection 12 of House
Bill No. 1016, supra, reads as follows:

"'(12) The State Board of Trustees shall
designate a Medical Board to be composed of
three (3) physicians not eligible to partici-
pate in the Retirement System. The physicians
so appointed by the State Board of Trustees
shall be legally qualified to practice medi-
cine in Texas and shall be physicians of good
standing in the medical profession. If re-
quired, other physicians may be employed to
report on special cases. The Medical Board
shall pass upon all medical examinations re-
quired under the provisions of this Act, and
shall investigate all essential statements and
certificates by or on behalf of a member of
connection with an application for disability
retirement, and shall report in writing to the
State Board of Trustees its conclusion and re-
commendation upon all the matters referred to
it."

Honorable Mortimer Brown, Page 4

Section 6, Subsection 7 of Senate Bill No. 47, supra, as amended by Section 3, Subsection 7 of House Bill No. 1016, supra, reads as follows:

"'(7) Subject to the limitations of this Act, the State Board of Trustees shall, from time to time, establish rules and regulations for eligibility of membership and for the administration of the funds created by this Act and for the transaction of its business."

An examination of Section 5, Subsection 3 of Senate Bill No. 47, as amended, supra, reveals that said section is silent as to the details concerning the medical examination of a member who files his application for a disability retirement allowance. Said section only provides "that the Medical Board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated. . . and that such member should be retired." There appears to be nothing in the Teacher Retirement Act which requires the Medical Board to actually make these medical examinations. The Act seems to require only that "The Medical Board shall pass upon all medical examinations required under the provisions of this Act." (Underscoring ours)

It is our opinion, based upon the above quoted sections of the Act, that the Board of Trustees of the Teacher Retirement System may promulgate rules requiring a member, when filing an application for his disability retirement allowance, to accompany with his application a physician's certificate or certificates containing such information as the Board of Trustees may require concerning such member's mental or physical condition.

We wish to point out that as to this particular medical examination the Act is silent as to the authority of the Board of Trustees to designate the examining physician. We note that Subsection 5, Section 5 of Senate Bill No. 47, as amended, supra, specifically provides that, as to subsequent medical examinations, the Board of Trustees shall designate the examining physicians. Therefore, since the Act expressly provided that the Board of Trustees should designate the examining physicians in one instance but is silent on this matter as to the examination required by Subsection 5, Section 3 of Senate Bill No. 47, as amended, supra, we conclude that the Board of Trustees has no authority to designate the examining physician to make such medical

Honorable Mortimer Brown, Page 5

examination as is required in Subsection 5, Section 3 of Senate Bill No. 47, as amended, supra. However, should the Board of Trustees be dissatisfied with the medical report of the member's physician, the Board has the authority under Section 6, Subsection 12 of Senate Bill No. 47 as amended, supra, to employ its own physician to make another medical examination of the member.

We find no provision in the Act which could be construed as giving the Board of Trustees the authority to determine the maximum amount that a physician shall charge a member for a medical examination. It is our opinion, therefore, that the Board of Trustees is not empowered to determine the maximum amount that a physician may charge a member for the medical examination as required in Section 5, Subsection 3 of Senate Bill No. 47, as amended, supra. It is clear, however, that the Board of Trustees has the power to determine the compensation of a physician when such physician is employed by the Board of Trustees.

We trust that we have satisfactorily answered your question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JUL 22, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By _Lee Shoptaw_

Lee Shoptaw
Assistant

LS:LM

